IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| B.R.F., <br><br> Petitioner, <br> v. <br><br> KRISTI NOEM, Secretary of U.S. Department of Homeland Security, PAMELA BONDI, United States Attorney General, TODD LYONS, Acting Director U.S. Immigration Customs Enforcement (ICE), LAURA HERMOSILLO, Seattle Field Office Director, Immigration and Customs Enforcement and Removal Operations (ICE/ERO), U.S. IMMIGRATION AND CUSTOMS ENFORCEMENT, and U.S. DEPARTMENT OF HOMELAND SECURITY, <br><br> Respondents. | Case No.: 3:25-cv-02154-AN <br><br> Agency Case No.: A242-116-680 <br><br> OPINION AND ORDER |

        Petitioner B.R.F. is a Guatemalan citizen who is married to a United States citizen. Petitioner is the beneficiary of two documents approved by the Department of Homeland Security ("DHS"): (1) an I-130 Petition, filed by petitioner's spouse on petitioner's behalf; and (2) an I-601A Application for Provisional Unlawful Presence Waiver, based on the extreme hardship posed to petitioner's United States citizen spouse. Petitioner has an Immigrant Visa interview scheduled to take place at the United States Embassy in Guatemala City, Guatemala, on January 14, 2026.

        On November 20, 2025, respondents detained petitioner. The same day, petitioner filed a petition for writ of *habeas corpus* (the "*habeas* petition") and motion for temporary restraining order. The Court held telephone status conferences on November 20 and 21, 2025, and based on the representations made at those hearings, denied petitioner's motion for temporary restraining order as moot and set a briefing schedule as to the *habeas* petition. After reviewing the parties' thorough filings and having heard the parties at two telephonic hearings, the Court finds that oral argument will not help resolve this matter and thus

takes the *habeas* petition under submission pursuant to Local Rule 7-1(d). For the following reasons, the *habeas* petition is GRANTED.

## LEGAL STANDARD

To prevail on a petition for a writ of *habeas corpus*, a petitioner must show, in relevant part, that "[h]e is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). Because a writ of *habeas corpus* is a civil proceeding, "[t]he petitioner carries the burden of proving by a preponderance of the evidence that he is entitled to habeas relief." *Davis v. Woodford*, 384 F.3d 628, 638 (9th Cir. 2004). The writ is equally available to noncitizens in immigration detention. *See Demore v. Kim*, 538 U.S. 510, 517 (2003); *see also Zadvydas v. Davis*, 533 U.S. 678, 688 (2001). Although the *habeas* statute requires a petitioner be "in custody" when his petition is filed, "once the federal jurisdiction has attached in the District Court, it is not defeated by the release of the petitioner prior to completion of proceedings on such application." *Carafas v. LaVallee*, 391 U.S. 234, 238 (1968).

## BACKGROUND

Petitioner, a Guatemalan citizen, married a United States citizen on July 20, 2019. Pet. for Writ of Habeas Corpus ("Habeas Pet."), ECF [1], ¶¶ 4, 8. On June 12, 2020, petitioner's spouse filed an I-130 Petition for Alien Relative with the Department of Homeland Security ("DHS") on petitioner's behalf, which DHS approved on October 8, 2020. *Id.* ¶ 8 & Ex. A, ECF [1-2]. On December 9, 2022, petitioner filed an I-601A Application for Provisional Unlawful Presence Waiver. *Id.* ¶ 9 & Ex. B, ECF [1-3]. Upon finding that petitioner's spouse would be caused extreme hardship if petitioner were not allowed to remain in the United States, DHS approved petitioner's I-601A application on April 15, 2025. *Id.* In May 2025, petitioner submitted an immigrant visa application to the Department of State, Pet'r Mot. for TRO ("TRO Mot."), ECF [2], at 3, and on November 10, 2025, learned that he had been scheduled for an immigrant visa interview in Guatemala City, Guatemala, Habeas Pet. ¶ 10 & Ex. C, ECF [1-4]. The interview is scheduled to take place on January 14, 2026. Habeas Pet. ¶ 10 & Ex. C. In both the I-601A and immigrant visa applications, petitioner disclosed to DHS and the Department of State a 2020 conviction for harassment.

Pet'r Reply Supp. Habeas Pet. ("Pet'r Reply"), ECF [10], at 3. Prior to approving petitioner's applications, DHS reviewed the record of conviction, took petitioner's fingerprints, and performed a background check. *Id.*

On November 20, 2025, respondents detained petitioner via a traffic stop for reasons then-unknown to petitioner. *See id.* at 2; Habeas Pet. ¶ 11; Resp'ts Resp. to Habeas Pet. ("Gov't Resp."), ECF [8], at 2. Petitioner was arrested and taken to the United States Immigration and Customs Enforcement ("ICE") office in Portland, where he contacted his spouse and informed her of his detention. TRO Mot. 3. Petitioner's spouse contacted petitioner's counsel, *id.*, who filed the *habeas* petition at approximately 1:19 p.m. that day, *see* Mins. of Proceedings of November 20, 2025, ECF [5], and the motion for temporary restraining order shortly thereafter.

The Court held a telephone status conference at 2:30 p.m. the same day and, based on respondents' oral representations during that hearing that petitioner had not been removed from the District of Oregon, found that the Court has subject matter jurisdiction over the *habeas* petition. Mins. of Proceedings of November 20, 2025. The Court ordered respondents to inform the Court of the legal basis of petitioner's detention by 4:30 p.m. that day, and further ordered that respondents not transport petitioner out of the District of Oregon unless otherwise ordered by the Court. *Id.*

On November 21, 2025, the Court held a second telephone status conference. Mins. of Proceedings of November 21, 2025, ECF [7]. During this hearing, the parties stated that respondents released petitioner the previous evening with a GPS ankle monitor. *See id.* The Court ordered that respondents not re-detain petitioner pending the Court's ruling on the *habeas* petition. *Id.* As a result of this order, the Court denied plaintiff's motion for temporary restraining order as moot and set a briefing schedule as to the *habeas* petition. *Id.*

Also on November 21, 2025, ICE filed a Notice to Appear with the Immigration Court in Portland, Oregon, charging petitioner as inadmissible under 8 U.S.C. § 1182(a)(6)(A)(i) "for being present in the [United States] without admission or parole" and thereby initiating removal proceedings. Pet'r Reply 3. On November 26, 2025, petitioner filed a motion to terminate the removal proceedings, which was

3

granted by the Immigration Judge on December 3, 2025. *Id.*

Also on November 26, 2025, respondents filed a response to the *habeas* petition, as well as a supporting declaration from the Acting Supervisory Detention and Deportation Officer of ICE's Office of Enforcement and Removal Operations ("ERO"). *See generally* Gov't Resp.; Decl. Anthony Jackson Supp. Gov't Resp. ("Jackson Decl."), ECF [9]. In the response and supporting declaration, respondents assert that when stopped by ERO officers, petitioner "identified himself" and "admitted that he had illegally entered the United States and did not have documents that would allow him to be in the country legally." Gov't Resp. 2; *see* Jackson Decl. ¶ 4. The ERO officers then "had personnel in the Field sub-Office review immigration databases to verify [p]etitioner's status," and "confirmed that [p]etitioner did not have an existing alien registration number and therefore did not have legal status." Gov't Resp. 2. The ERO officers arrested petitioner and "intended to transport [him] to the Northwest ICE Processing Center in Tacoma, Washington," however, as a result of the Court's order that petitioner not be removed from the District of Oregon, petitioner was instead released with an ankle monitor. Gov't Resp. 2-3; Jackson Decl. ¶¶ 8-9. Respondents assert that "[p]etitioner was detained and charged as being inadmissible under Section 212(a)(6)(A)(i) of the Immigration and Nationality Act ('INA')" and that petitioner's detention is proper under 8 U.S.C. § 1225(b). Gov't Resp. 3, 5, 7. Petitioner filed a reply in support of the *habeas* petition on December 3, 2025. Pet'r Reply.

## DISCUSSION

Petitioner contends that his detention without notice and without a determination that he is a flight risk or danger to the community violates the Due Process Clause of the United States Constitution.[1] Respondents assert that (1) the Court lacks subject matter jurisdiction to review the *habeas* petition because "[p]etitioner has been placed in immigration proceedings" and "[h]is detention and immigration status are therefore properly before the Immigration Court and the Court of Appeals"; (2) petitioner is "properly

---

[1] Petitioner also contends that respondents' detention of petitioner was "arbitrary and capricious and in violation of [r]espondents' own policies" under the Administrative Procedures Act ("APA"). TRO Mot. 5. However, because the Court resolves the *habeas* petition on due process grounds, the Court does not reach petitioner's APA arguments.

4

detained under . . . [Section] 1225" because he is subject to mandatory detention for being "present in the United States without legal status"; and (3) petitioner's approved I-601A Provisional Unlawful Presence Waiver "is a provincial waiver" that "does not preclude detention." Gov't Resp. 3-8.  For the following reasons, the Court finds that it has jurisdiction and that petitioner's detention violates due process.

**A.     Subject Matter Jurisdiction**

Respondents first make a jurisdictional argument, asserting that because petitioner has been placed in immigration proceedings, the Court lacks subject matter jurisdiction over this case under 8 U.S.C. §§ 1252(a)(5), (b)(9), and (g).  Gov't Resp. 3-5.  Not so.

Although a district court generally lacks subject matter jurisdiction to review orders of removal and issues "arising from" the commencement of removal proceedings, adjudication of cases, or execution of removal orders, *see* 8 U.S.C. §§ 1252(a)(1), (g), a district court does generally have jurisdiction over petitions for writs of *habeas corpus*, *see* 28 U.S.C. § 2241(a); *see also Hamdi v. Rumsfeld*, 542 U.S. 507, 525 (2004) (citing U.S. Const., Art I, § 9, cl. 2, and stating that "absent suspension, the writ of habeas corpus remains available to every individual detained within the United States").  Writs of *habeas corpus* "encompass[] detentions based on errors of law, including the erroneous application or interpretation of statutes," *INS v. St. Cyr*, 533 U.S. 289, 302 (2001), and "where Congress intends to preclude judicial review of constitutional claims its intent to do so must be clear," *Demore*, 538 U.S. at 517 (citation and quotation marks omitted).

To argue that judicial review is precluded here, respondents rely on 8 U.S.C. §§ 1252(a)(5), (b)(9), and (g).  However, the plain language of each subsection and existing case law both bely respondents' arguments.  Section 1252(a)(5) provides in relevant part that "a petition for review filed with an appropriate court of appeals in accordance with [Section 1252] shall be the sole and exclusive means *for judicial review of an order of removal* entered or issued[.]"  *Id.* § 1252(a)(5) (emphasis added).  Similarly, Section 1252(b)(9) precludes judicial review of "all questions of law and fact . . . *arising from any action taken or proceeding brought to remove an alien from the United States*[.]"  *Id.* § 1252(b)(9) (emphasis added).  Petitioner does not seek judicial review of an order of removal or of any question of law or fact arising from

5

any action taken or proceeding brought to remove an alien from the United States, and thus, by their plain language, subsections (a)(5) and (b)(9) are inapplicable. *See Singh v. Gonzales*, 499 F.3d 969, 978 (9th Cir. 2007) ("By virtue of their explicit language, both §§ 1252(a)(5) and 1252(b)(9) apply only to those claims seeking judicial review of orders of removal."); *see also Jennings v. Rodriguez*, 583 U.S. 281, 292-95 (2018) (holding that "questions of law" regarding whether "certain statutory provisions require detention without a bond hearing" do not "arise from" the removal decision contemplated by subsection (b)(9)).

Similarly, Section 1252(g) divests district courts of "jurisdiction to hear any cause or claim by or on behalf of any alien ***arising from the decision or action by the Attorney General to commence proceedings, adjudicate cases, or execute removal orders against any alien*** under this chapter." 8 U.S.C. § 1252(g) (emphasis added). Petitioner likewise does not challenge a decision by the Attorney General to commence a proceeding, adjudicate a case, or execute a removal order; rather, petitioner challenges the legality of his detention in the first instance. *See Canal A Media Holding, LLC v. U.S. Citizenship & Imm. Servs.*, 964 F.3d 1250, 1257 (11th Cir. 2020) (citation and quotation marks omitted) (holding that Section 1225(g) "bars challenges only to the three discrete actions enumerated in the statute"); *Maldonado v. Olson*, 795 F. Supp. 3d 1134, 1145 (D. Minn. 2025) (holding that the petitioner's due process challenge was not barred by Section 1252(g) where it did not "challenge the actions of [the respondents] in commencing proceedings, adjudicating cases, or executing removal orders"); *Maldonado Vazquez v. Feeley*, --- F. Supp. 3d ---, 2025 WL 2676082, at *8 (D. Nev. Sept. 17, 2025) ("[B]ecause [the petitioner] challenges the lawfulness of his detention during the pendency of his removal proceedings, it is not a challenge to one of the 'three discrete events along the road to deportation' that [Section] 1252(g) applies to." (quoting *Reno v. Am.-Arab Anti-Discrim. Comm.*, 525 U.S. 471, 482 (1999)); *Leal-Hernandez v. Noem*, No. 1:25-cv-02428-JRR, 2025 WL 2430025, at *5 (D. Md. Aug. 24, 2025) (finding Section 1252(g) presents no bar where the petitioner "mounts a challenge solely to his continued custody"); *Sanchez v. LaRose*, No. 25-cv-2396-JES-MMP, 2025 WL 2770629, at *2 (S.D. Cal. Sept. 26, 2025) (citation omitted) ("Here, [the petitioner] seeks only review of the legality of her detention, which does not require judicial intervention into the Attorney General's decisions to commence proceedings, adjudicate cases, and execute removal orders."). The Court

holds in accord with the weight of authority and finds that Section 1252(g) does not bar petitioner's *habeas* petition.

Having found that the Court has subject matter jurisdiction over the *habeas* petition, the Court next turns to the merits of respondents' substantive arguments.

**B.      Mandatory Detention Under Section 1225**

Respondents next argue that petitioner is subject to mandatory detention pursuant to 8 U.S.C. § 1225(b). Gov't Resp. 5-7. Specifically, respondents assert that because "[p]etitioner did not present himself at a [port of entry] but instead entered the United States on some unknown date and without having been admitted after inspection by an immigration officer," he is "an alien present without immigration status and, consequently, an applicant for admission," and his detention is thus mandatory under "the plain language of [Section] 1225(b)[.]" *Id.* at 7. Though it is not cited by respondents, respondents' argument largely tracks the ruling made in *Matter of Yajure Hurtado*, 29 I. & N. Dec. 216 (BIA 2025). Put simply, respondents' contention appears to be that if petitioner is detained pursuant to Section 1225(b), rather than the discretionary detention provisions of Section 1226(a), then an Immigration Judge (and thus this Court) "d[oes] not have authority over the bond request . . . and [petitioner] ***must be detained*** for the duration of [his] removal proceedings." *Matter of Yajure Hurtado*, 29 I. & N. Dec. at 220 (emphasis added); *see* Gov't Resp. 7 (arguing that "detention is mandatory" because petitioner is "present without immigration status").

As this Court has noted before, over the last year, dozens of courts have considered and rejected respondents' argument that Section 1225(b) applies to noncitizens who have been in the country for an extended period. *See L.A.E. v. Wamsley*, No. 3:25-CV-01975-AN, 2025 WL 3485763, at *3 (D. Or. Dec. 4, 2025); *see also J.Y.L.C. v. Bostock*, No. 3:25-cv-02083-AB, 2025 WL 3169865, at *2 (D. Or. Nov. 12, 2025) (collecting more than thirty cases rejecting respondents' "dubious assertion" that Section 1225 empowers respondents to arrest and hold any noncitizen present without legal status, regardless of whether they are detained at a port of entry). Respondents have shown no reason to depart from the great weight of authority here.

7

Section 1225(b) "authorizes the Government to detain certain [noncitizens] *seeking admission into the country*," whereas Section 1226(a) and (c) "authorize[] the Government to detain certain [noncitizens] *already in the country* pending the outcome of removal proceedings[.]" *Jennings*, 583 U.S. at 289 (emphases added). Petitioner is decisively in the latter category of noncitizens: he has been in the country for many years,[2] is the beneficiary of approved I-360 and I-610 applications, and was arrested in Portland, Oregon, more than 200 miles from a land border. Petitioner is not a noncitizen "seeking admission" within the meaning of Section 1225(b)(2)(A), and he is thus subject to detention only under the provisions of Section 1226.

C.  **Discretionary Detention Under Section 1226**

Having concluded that petitioner's detention is governed by Section 1226, the Court must now consider whether respondents' exercise of discretion under that statute conformed with the Due Process Clause, which protects all "person[s]" from deprivation "of life, liberty, or property, without due process of law." U.S. Const. amend. V.[3] Assessing whether a noncitizen's detention violates the Due Process Clause requires balancing three factors: (1) "'the private interest that will be affected by the official action'"; (2) "'the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards'"; and (3) "'the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirements would entail.'" *Pinchi v. Noem*, 792 F. Supp. 3d 1025, 1033 (N.D. Cal. 2025) (quoting *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976)). Respondents appear to rest their hats on their mandatory detention argument, as they offer no argument as to the effect of Section 1226 or the *Mathews* factors in this case. Regardless, the Court concludes that petitioner has established that the *Mathews* factors favor granting the *habeas* petition.

---

[2] It is not clear from the record exactly when petitioner entered the United States. Regardless, there is no dispute that petitioner has been in the United States since before his marriage to a United States citizen in July 2019.

[3] Respondents do not challenge Supreme Court precedent holding that the Due Process Clause applies to noncitizens in petitioner's circumstances. *See, e.g.*, *Trump v. J.G.G.*, 604 U.S. 670, 673 (2025); *Zadvydas*, 533 U.S. at 693-94; *Wong Wing v. United States*, 163 U.S. 228, 238 (1896).

8

With respect to the first *Mathews* factor, the private interest affected by petitioner's detention is his interest in physical liberty. "Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that [the Due Process] Clause protects." *Zadvydas*, 533 U.S. at 690. There can be no doubt that "[t]he interest in freedom from physical detention is 'the most elemental of liberty interests.'" *Perez Camacho v. Hollinshead*, No. 1:25-cv-00593-BLW, 2025 WL 3228998, at *8 (D. Idaho Nov. 19, 2025) (quoting *Hamdi*, 542 U.S. at 529). "Just as people on preparole, parole, and probation status have a liberty interest, so too does [a noncitizen subject to removal] have a liberty interest in remaining out of custody on bond." *Ortega v. Bonnar*, 415 F. Supp. 3d 963, 969 (citing *Morrissey v. Brewer*, 408 U.S. 471, 482 (1972); *Gagnon v. Scarpelli*, 411 U.S. 778, 782 (1973)). Thus, the first *Mathews* factor weighs heavily in petitioner's favor.

Second, the risk that respondents will erroneously deprive petitioner of his liberty in the absence of a pre-deprivation finding of flight risk or danger is high. Civil immigration detention must be "nonpunitive in purpose and effect"—*i.e.*, it must be reasonably related to the statutorily-authorized purposes of preventing flight and danger to the community. *Zadvydas*, 533 U.S. at 690. Respondents do not explicitly argue that petitioner is dangerous or a flight risk, though they allude to danger through references to petitioner's prior harassment conviction. *See* Gov't Resp. 3 (referencing "public safety concerns"). However, where petitioner informed DHS on two separate applications of this conviction and received approvals as to both applications, and where petitioner is married to a United States citizen and has no other identified law enforcement involvement, the Court must conclude that respondents have not met their burden on this issue. Absent a particularized finding that he is a flight risk or danger to the community, there is a serious risk that petitioner will face an erroneous deprivation of liberty. *See Pinchi*, 792 F. Supp. 3d at 1035 (citing *Zadvydas*, 533 U.S. at 690) (observing that "[c]ivil immigration detention is permissible only to prevent flight or protect against danger to the community" and finding that the second *Mathews* factor favored the petitioner where "the government [] offered no evidence . . . that [the petitioner's] detention would serve either purpose"). Thus, the second *Mathews* factor also favors petitioner.

Third and finally, respondents have articulated no legitimate interest in holding petitioner

9

without a hearing. Respondents' interest in enforcing immigration laws, generally, has little bearing on the legitimacy of detaining petitioner without a bond hearing. *See id.* at 1036 ("[D]ue process requires the government to identify some interest beyond its own administrative practices to justify depriving an individual of her liberty without any pre-deprivation protections."). In fact, the only conceivable interest respondents could have in petitioner's detention without a hearing is if he were a flight risk or danger to the community. As discussed above, there is scant evidence of that. Finally, the cost of petitioner's detention is substantial in comparison to the minimal cost to the government of providing petitioner a pre-deprivation hearing. *See Hernandez v. Sessions*, 872 F.3d 976, 996 (9th Cir. 2017) ("The costs to the public of immigration detention are 'staggering.'"); *see also Doe v. Becerra*, 787 F. Supp. 3d 1083, 1094 (E.D. Cal. 2025) (finding the third *Mathews* factor favored the petitioner because "[t]he effort and cost required to provide [the petitioner] with procedural safeguards is minimal"). For these reasons, the third *Mathews* factor also favors petitioner.

Having found that all three *Mathews* factors favor petitioner, the Court concludes that petitioner is entitled to reasonable notice and a hearing, and respondents have violated petitioner's due process rights by holding him without such a hearing. The Court declines to address the parties' remaining arguments, which are irrelevant to the Court's analysis.

## CONCLUSION

For the reasons stated herein, petitioner's Petition for Writ of Habeas Corpus, ECF [1], is GRANTED.  In fashioning a *habeas* writ, "a court has broad discretion in conditioning a judgment granting habeas relief" and in "dispos[ing] of habeas corpus matters 'as law and justice require.'"  *Hilton v. Braunskill*, 481 U.S. 770, 775 (1987) (quoting 28 U.S.C. § 2243).  Here, the Court finds that law and justice require, pursuant to Section 1226(a), an individualized finding of dangerousness or flight risk by an Immigration Judge if petitioner is to be detained.  *See Prieto-Romero v. Clark*, 534 F.3d 1053, 1059, 1065 (9th Cir. 2008).  For these reasons, and because respondents offer no authority for detaining petitioner other than Section 1225, which does not apply to petitioner, the Court ORDERS that respondents are PERMANENTLY ENJOINED from arresting or detaining petitioner pursuant to 8 U.S.C. § 1225.  If, at any time, respondents arrest or detain petitioner pursuant to 8 U.S.C. § 1226(a), the Court ORDERS that petitioner be provided reasonable notice and a hearing.

IT IS SO ORDERED.

DATED this 12th day of January, 2026.

*(signature)*
Adrienne Nelson
United States District Judge